IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL VOLL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 07 C 2601 |
| v. ) | |
| ) | Chief Judge James F. Holderman |
| ROBERT FALOR, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Michael Voll brought this action for damages, preliminary injunction, permanent injunction, and appointment of a receiver after investing more than $1 million in real estate development projects controlled by Robert Falor. Named as defendants are Falor; four companies run by Falor; two officers or managers of those companies; Falor's brother and ex-wife; Guy Mitchell, one of Falor's business associates; and Mitchell Hotel Group, LLC, one of Mitchell's companies. Mitchell and Mitchell Hotel Group, LLC (the "Mitchell Defendants") move to dismiss Voll's amended complaint under Federal Rule of Civil Procedure 12(b) for lack of standing and failure to state a claim [53]. For the following reasons, this court grants the Mitchell Defendants' motion.

## Background

According to Voll's amended complaint [48], in 2004 Voll began buying "investment units," which represented membership interests, in various LLCs established by Falor for the purpose of purchasing hotels, converting them into hotel-condominiums, and reselling the units for a profit. When Falor first approached Voll for money to fund the hotel-condominium projects, he represented that Voll could expect to receive large returns on the investments over

short periods of time.  Voll has never realized the projected returns, however, and believes that his principal investment has been compromised by what he characterizes as "a continuous pattern of breach of promise, fraud, disloyalty, self dealing, breach of fiduciary duties, and breaches of contract by the Defendants."  In total, Voll invested in four of Falor's projects, but only two of those endeavors directly relate to Voll's allegations against the Mitchell Defendants.

In November 2004 Falor sold to Voll certain "investment units" in Tides Hotel Investors, LLC, which had been created for the purpose of purchasing the Tides Hotel in Miami, Florida, and converting it into condominium units.  Approximately six months later, in June 2005, Falor and Voll further agreed that as part of the investment agreement Voll would acquire ownership of two condominium units at the Tides Hotel.  Unbeknownst to Voll at the time of his initial investment or subsequent agreement with Falor, in November 2004 "Defendant Robert Falor permitted Defendant Guy Mitchell . . . to retain three adjoining parcels for a token payment of [$1 million], which was far below the fair market value."  As a result, Voll contends, investors overpaid for the hotel, thus diluting their investment interest in Tides Hotel Investors, LLC.  In addition, the Mitchell Defendants further diluted the value of the investors' interest in the Tides Hotel because they wrongfully received "distributions of at least [$1,500,000]," "compensation from the manager LLCs," and services intended for the Tides Hotel.  The majority equity partner in the Tides Hotel ultimately forced the sale of the  hotel.  Voll never received possession of the two condominium units, and investors received nothing.

To redress the losses sustained by Voll in connection with the Tides Hotel, Voll and Falor entered into a settlement agreement in August 2006.  Under the terms of that agreement, Voll agreed to accept assignment from Falor's brother, Christopher Falor, of an unsecured

2

promissory note in the amount of $1,450,000 owed to him by Printers Row, LLC (another of Falor's hotel-condominium projects in which Voll had invested and the entity Falor identified as owning the Printers Row Hotel in Chicago, Illinois). Printers Row, LLC in turn agreed to list the Printers Row Hotel for sale and pay Voll the full value of the note from the sale proceeds. The Printers Row Hotel was not sold as proposed in the settlement agreement, and when Voll attempted to collect on the note, he was denied payment. Falor subsequently disclosed that the Printers Row Hotel was not owned by Printers Row, LLC or any of the other Falor-controlled entities but by a third-party unrelated to this litigation.

At the same time Falor was negotiating the settlement agreement with Voll, Falor and entities under his control were also negotiating a separate deal to secure a $12,500,000 loan for improvements to the Royal Palm Hotel, a property owned by Guy Mitchell. To obtain the loan, Falor pledged the Printers Row Hotel as collateral but, Voll says, "[t]here [was] no benefit to the Plaintiff or other investors in Printers Row." Mitchell repaid the loan in full.

Falor and the Mitchell Defendants also entered into two other agreements that Voll alleges affected the value of his investment interests in Falor's projects. In August 2004 Falor agreed to "share equally in The Falor Companies and related entities' profits" with Mitchell and granted Mitchell an equity interest in the LLCs established to manage the Falor-controlled properties. And in February 2005, Falor, on behalf of the LLCs established to manage the Falor-controlled properties, agreed to pay Mitchell $20,000,000 "from the proceeds of the projects collectively and/or individually."

Voll's amended complaint sets forth six counts against the Mitchell Defendants. In Count VI, Voll claims that the Mitchell Defendants' acquisition of property adjacent to the Tides at

3

below-market value "decreased the value of the Tides Hotel" while bestowing an unjust benefit on the Mitchell Defendants, that the $12,500,000 loan secured by the Printers Row Hotel "imposed an improper and fraudulent obligation on Printers Row Hotel" while conferring an unjust benefit on the Mitchell Defendants, and that the August 2004 agreement "provided the Mitchell Defendants with certain rights to the Properties to the detriment of Plaintiff."  In Count VIII, Voll claims generally that the Mitchell Defendants exercised dominion or control over his property in a manner inconsistent with his right of ownership.  In Count IX, Voll claims generally that the Mitchell Defendants "knowingly and substantially assisted the Falor Defendants' wrongful exercise of dominion or control over" his property.  In Count XI, Voll claims that the Mitchell Defendants knew of his agreements with Falor concerning the Tides and Printers Row Hotels and that the Mitchell Defendants intentionally interfered with those contracts.  In Count XII, Voll claims generally that the Mitchell Defendants conspired with Falor to "exercise control over" his ownership interests in "the Properties."  In Count XIII, Voll requests an accounting.

## **Analysis**

The Mitchell Defendants move to dismiss Voll's amended complaint on the ground that Voll's claims are each derivative and thus Voll lacks standing to bring the claims in his individual capacity.  Generally, "a corporate shareholder does not have an individual right of action against third parties for damages to the shareholder resulting indirectly from injury to the corporation." *Flynn v. Merrick*, 881 F.2d 446, 449 (7th Cir. 1989); *see Hunter v. Old Ben Coal Co.*, 844 F.2d 428, 432 (7th Cir. 1988)  A stockholder, however, may have an individual right of action against a third party where the injury is not only against the corporation but also arises

4

from a contract or other duty owed directly by the third party to the stockholder. *See Hunter*, 844 F.2d at 432.

From the facts of Voll's amended complaint, it appears that Voll has pleaded purely derivative claims against the Mitchell Defendants insofar as Voll alleges that his investment interests in the Falor-controlled companies were diminished when the Mitchell Defendants used or acquired assets of those companies. But Voll does not dispute that he lacks standing to pursue derivative claims against the Mitchell Defendants. Instead, Voll attempts to clarify in his opposition to the Mitchell Defendants' motion to dismiss [74] and sur-reply [88] that he suffered individual, not derivative, injury as a result of the Mitchell Defendants' actions.

Voll asserts that he pleaded two non-derivative claims against the Mitchell Defendants. First, Voll claims that the Mitchell Defendants directly impaired his right to acquire the two condominium units in the Tides Hotel when the Mitchell Defendants "tortuously interfered with said right by entering into the various agreements and secret side deals with the Falor Defendants related to the Tides." Second, Voll claims that the Mitchell Defendants tortuously interfered with the August 2006 settlement agreement between Voll and Falor because "the Mitchell Defendants' surreptitious negotiations and agreements with the Falor Defendants to secure a $12,500,000 loan, preempted any rights or interest Plaintiff had in the Printers Row Hotel."

To the extent that Voll's amended complaint can be read to include the two claims identified by Voll, these claims and the remaining derivative claims against the Mitchell Defendants must be dismissed for failure to state a claim. When considering a motion to dismiss under Rule 12(b), the court must accept as true all well-pleaded factual allegations in the complaint and draw all inferences in favor of the plaintiff. *See Sigsworth v. City of Aurora*, 487

5

F.3d 506, 508 (7th Cir. 2007). To state a claim, a party need submit only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff may plead himself out of court, however, by including facts in the complaint that undermine his claim. *Lekas v. Briley*, 405 F.3d 602, 613-14 (7th Cir. 2005). In ruling on a motion to dismiss, the court may consider documents attached to the complaint so long as they are consistent with the allegations of the complaint. *Help At Home, Inc. v. Med. Capital, LLC*, 260 F.3d 748, 752-53 (7th Cir. 2001).

In his briefs opposing dismissal, Voll attempts to recast his claims against the Mitchell Defendants as inflicting direct, individual harm against his interests in the two Tides Hotel units because, he says, the Mitchell Defendants knowingly interfered with his purchase of those units by entering into "secret side deals" with Falor—specifically, the purchase of property adjacent to the Tides Hotel at below-market value—that diminished the value of the Tides Hotel and hence the two Tides Hotel units. But Voll has said too much. Voll asserts for the first time in his sur-reply that he acquired "ownership interests" in the two Tides Hotel units prior to the Mitchell Defendant's acquisition of the adjacent properties. It is undisputed that Voll first invested in the Tides Hotel project in November 2004 and that the Mitchell Defendants acquired property adjacent to the hotel that same month. Documents attached to the amended complaint establish, however, that in November 2004 Voll received only a right of first refusal to purchase two Tides Hotel units. It was not until June 2005, according to the facts set forth in Voll's amended complaint, that Voll and Falor reached agreement concerning Voll's acquisition of the units: "By a supplemental agreement dated June 29, 2005, attached as Exhibit 2, the parties agreed that the Plaintiff's reinvested funds and new investments satisfied the purchase price and entitled him to

6

acquire two units in the Tides Hotel."  Thus Voll's right to acquire the two units did not come into existence until June 2005.  The Mitchell Defendants' purchase of property adjacent to the Tides Hotel in November 2004 therefore could not have interfered with Voll's contract to purchase the two Tides Hotel units, entered into nearly seven months later.  *See, e.g., Purmal v. Robert N. Wadington & Assocs.*, 820 N.E.2d 86, 98 (Ill. App. Ct. 2004) (explaining that existence of valid and enforceable contract between plaintiff and third party is necessary element of tortuous interference claim); *Kehoe v. Saltarelli*, 786 N.E.2d 605, 612 (Ill. App. Ct. 2003) (same).

Similarly, Voll's attempt to recast his claims against the Mitchell Defendants as interfering with any right or interest he acquired in the Printers Row Hotel by way of the August 2006 settlement agreement also fails.  Documents attached to Voll's complaint establish that Voll received from Christopher Falor and the Falor-controlled entities only an unsecured promissory note owed to Christopher Falor by Printers Row, LLC, making Voll, at most, an unsecured creditor of Printers Row, LLC.  Although the Mitchell Defendants' use of the Printers Row Hotel as collateral on a loan to improve the Mitchell Defendants' property may have interfered with Voll's place in line for collection on the note, Voll alleges only that he was unable to collect on the note because the hotel was never sold as promised in the settlement agreement and because Falor, Christopher Falor, and Printers Row, LLC refused payment.  Voll alleges no facts supporting the position that the Mitchell Defendants' conduct caused Printers Row, LLC to refrain from selling the hotel or Falor to refuse payment of the note.  *See, e.g., Purmal*, 820 N.E.2d at 98 (explaining that defendant's intentional and unjustified inducement of breach is necessary element of tortuous interference claim); *Kehoe*, 786 N.E.2d at 612 (same).  To the

7

contrary, Voll alleges that Printers Row, LLC never owned the Printers Row Hotel and so could not have sold the hotel to satisfy the note and that the Mitchell Defendants fully satisfied the loan, restoring Voll's place in the collection line.

## **Conclusion**

     For the reasons stated above, Voll's claims against the Mitchell Defendants are dismissed for lack of standing or, alternatively, for failure to state a claim.

ENTER:

_____
Chief Judge James F. Holderman

Dated: November 30, 2007